## Case No. 8,068.

### LANGLEY v. The SYRACUSE.

[N. Y. Times, March 17, 1867.]

District Court, S. D. New York. March, 1867.[1]

[1. While it is entirely competent for the parties to vary the responsibility of the towing boat as a common carrier under the maritime law, the words in the towage contract, "at the risk of" her master and owners. do not discharge the towing boat from the exercise of all reasonable skill, attention, fidelity, and precaution in the performance of the contract.]

[2. A steamboat is liable for the loss of one of her tows in collision with a vessel at anchor, while endeavoring to round the Battery in New York harbor, against a strong ebb tide, with a large tow, where it was apparent that she had not sufficient force to make the maneuver.]

[Cited in The Brooklyn, Case No. 1,938.]

[Libel in rem by one Langley against the steamboat Syracuse for collision.]

Scudder & Carter, for libelant.

Benedict, Tracy & Benedict, for claimant.

Before BETTS, District Judge. This was an action brought by the master and owner of the canalboat J. K. Eldridge against the Syracuse, to recover the damages occasioned by the sinking of the canalboat while in tow of the steamboat in rounding from the North into the East river, on the 1st day of December, 1861. The canalboat was one of a number of boats which were towed down from Albany in five tiers, being the starboard boat in the last tier but one. On coming down into the harbor of New York, a great number of vessels were found to be lying at anchor off the Battery, and the master of the Syracuse chose his path through them. The tide was setting strong ebb. Two other steamtugs were employed to assist the tow in coming round, and the Syracuse and the barges alongside passed safely through the vessels, and had headed up against the ebb tide which sets out of the East river above Governor's Island, but the tow behind her was not drawn round so quick but that the libelant's boat was carried against the bow of a vessel lying at anchor, and so injured that she was compelled to run ashore on Governor's Island, where she filled and sank and became a total loss. The libelant claimed that the steamboat was charged with the responsibilities of a common carrier, while the respondents claimed that the towing was done under a contract by which the vessel was to be towed "at the risk of her master and owners."

HELD BY THE COURT: That prima facie the relation in which the Syracuse stood to the canalboat under the maritime law guaranteed to the latter a safe conveyance to her place of destination at the charge and responsibility of the former. The Express [Case No. 4,596]. That it was entirely com-

[1] [Affirmed in Case No. 13,717.]

petent to the parties to vary that responsibility by the contract they entered into, and that under that contract the steamboat was not liable as a common carrier, but is liable only ex contractu. That the words in the receipt, "at the risk of her owners," did not operate to relieve or discharge the steamboat and her owners from the exercise of all reasonable skill, attention, fidelity, and precaution in the performance of the trust of hiring and transportation upon which she was engaged. The facts of this collision are very similar to those in the case of Rea v. The New York, 18 How. [59 U. S.] 225. The collision occurred about midday, in fair and bright weather, and the master of the Syracuse had a clear and plain view of the state of the river in his front, and the impediments of vessels at anchor on his route of travel to the pier in the East river to which his tow was destined. The testimony of the master of the Syracuse is that the rapidity and contrariety of the tidal currents at the place at which the vessel was lying at anchor, against which the canalboat was drawn by the Syracuse, did not leave a sufficient space and passageway for the Syracuse and her tow of forty boats to avoid her. It was most manifest that the Syracuse was adhering to her course in endeavoring to make her passage around the Battery, long after it was obvious to the towing vessel that she could not, with her force and means in use, succeed in carrying her numerous train of boats through the difficulties in the way without applying further help in aid of the tow, or bringing it to anchor. All the testimony in the case is full to the necessity of having more power employed in towing the train of boats attempted to be carried on the voyage, and that the Syracuse was well aware of it; that she placed two tugboats as helpers attached to the towing hawser, and secured the libelant's canalboat directly alongside the Syracuse, where she was personally in command of the tugs also, but offered no aid to her at the moment of the collision or help from either the tugs or steamer to the canalboat, but continued the motion of the general train ahead, and drew the canalboat into collision with the vessel at anchor, which collision caused the canalboat to founder and sink, and become a total loss, by the wrongful and tortious act of the Syracuse and her master. That the libelant is therefore entitled to recover his damages; decree accordingly.

[NOTE. An appeal was taken by the claimants to the circuit court, which affirmed the decree, Circuit Justice Nelson delivering the opinion. Case No. 13,717. The claimants then appealed to the supreme court. Mr. Justice Davis, in delivering the opinion, reviewed the evidence, and found that the steamer was guilty of great negligence in attempting, with so large a tow, to pass the Battery into East river. She should have divided her tow, or not made the attempt until the tide slacked. Upon the law involved, the learned justice remarked, that: "It is unnecessary to consider the evidence relating to the alleged contract

of towage, because, if it be true, as the appellant says, that, by special agreement, the canalboat was being towed at her own risk, nevertheless, the steamer is liable if, through the negligence of those in charge of her, the canalboat has suffered loss." And further, that: "Although the policy of the law has not imposed on the towing boat the obligation resting on a common carrier, it does require, on the part of the persons engaged in her management, the exercise of reasonable care, caution, and maritime skill; and if these are neglected, and disaster occurs, the towing boat must be visited with the consequences." The decree of the circuit court was affirmed. 12 Wall. (79 U. S.) 167.]